658 F.2d 526
 81-2 USTC P 9659
 UNITED STATES of America and Special Agent Glenn J. Kulas,
Petitioners- Appellees,
v.
John W. KIS, etc., et al., Respondents,
v.
George A. MEYERS, Intervenor-Appellant.
UNITED STATES of America and Special Agent Richard E.
Zagotta, Petitioners- Appellees,
v.
NELSEN STEEL & WIRE COMPANY, INC., etc., et al.,
Respondents-Appellants.
UNITED STATES of America and Special Agent Joseph A. DeLeon,
Petitioners- Appellants, Cross-Appellees,
v.
Jack SALKIN, etc., et al., Respondents-Appellees, Cross-Appellants,
UNITED STATES of America and Special Agent Donald Olsen,
Petitioners- Appellants,
v.
FIRST STATE BANK of CHICAGO, Respondent-Appellee,
and
Jack Salkin, Intervenor-Appellee, Cross-Appellant.
UNITED STATES of America and Special Agent Leonard H. Lupa,
Petitioners- Appellees,
v.
Donald L. ANDERSON and Harriet H. Anderson, Respondents-Appellants.
 Nos. 80-1710, 80-1996, 80-2164, 80-1770, 80-1771, 80-1795,
80-1796, 80-1869.
 United States Court of Appeals,
Seventh Circuit.
 Argued Jan. 23, 1981.
Decided Sept. 4, 1981.
Rehearing Denied Nov. 17, 1981.
 
 George A. Meyers, Racine, Wis., pro se.
 James C. Murray, Jr., Bonita Stone, Katten, Muchin, Zavis, Pearl & Galler, for Nelsen Steel & Wire Co.
 Daniel F. Ross, Atty., U. S. Dept. of Justice, Tax Div., Washington, D. C., for United States.
 Before SWYGERT, Senior Circuit Judge, KUNZIG,* Judge and BAUER, Circuit Judge.
 SWYGERT, Senior Circuit Judge.
 
 
 1
 These cases present appeals from Internal Revenue Service summons enforcement proceedings in several district courts. In three of the cases, the courts ordered enforcement of the summons. In the fourth, enforcement was denied. The wide disparity among these cases both in the final resolution and in the treatment of subsidiary issues such as the taxpayer's right to discovery indicates that we need to establish rules and procedures to be followed within our circuit.[1] Because these cases raise many issues in common regarding summons enforcement procedure, we treat them together in this one opinion as we consider the individual issues. We affirm the enforcement of the summonses in United States v. Kis, but we reverse for a limited remand the summons enforcement in United States v. Nelsen Steel & Wire Co. We reverse the denial of enforcement in United States v. Salkin, and we hold to be moot the appeal in United States v. Anderson.
 
 
 2
 * The facts of these cases fit a similar pattern. The Internal Revenue Service in the course of a taxpayer investigation issues a summons for production of records to a close corporation controlled by the taxpayer or to a bank with which the taxpayer or the corporation has conducted business.[2] The taxpayer, pursuant to statutory authority,[3] instructs the recipient of the summons not to comply. The United States and the special agent conducting the investigation then institute the enforcement proceedings that are contested here.[4] Despite the similarities among these cases, we must relate the facts in each case to understand the particular issues involved.
 
 United States v. Kis
 
 3
 In July 1978, the Criminal Investigation Division of the Internal Revenue Service in Milwaukee opened a formal investigation to determine the correct income tax liabilities of George A. Meyers, who had filed documents designated as "protest-type returns" for the years 1975, 1976, and 1977. Special Agent Glenn J. Kulas, who was assigned to the investigation, issued summonses to officers of several banks with whom Meyers had conducted business. Meyers, pursuant to section 7609 of the Internal Revenue Code of 1954, 26 U.S.C. § 7609 (1976), directed the officers, respondents in these cases, not to comply with the summonses, and the United States and Special Agent Kulas instituted enforcement proceedings in the Eastern District of Wisconsin on March 6, 1979.
 
 
 4
 In petitions seeking enforcement, the Government asserted that Kulas was conducting an investigation for the purpose of establishing Meyers's correct income tax liabilities for the years in question and that the testimony and information sought are necessary for that purpose; that the information sought is not in the possession of the Internal Revenue Service; and that all administrative steps required by the IRS for the issuance of summonses have been taken.[5] Following an order to show cause why the summonses should not be enforced, Meyers filed a responsive pleading that denied the assertions made in the Government's petition. He also alleged, among other things, that the investigation violated his Fifth Amendment rights and that its purpose was "to gain information so as to prosecute (him) criminally." Meyers also filed five pages of interrogatories, which the Government moved to quash.
 
 
 5
 A magistrate conducted a hearing on the petition on January 11, 1980, at which the Government presented testimony that, among other things, the investigation was in its initial stages; there were no records on which to proceed without the information requested in the summons; and that no decision had yet been reached whether to prosecute Meyers criminally. The testimony also revealed that all "protest-type returns" are not prosecuted, and that a revenue agent was assisting Kulas in the investigation. Meyers was able to cross-examine all the Government witnesses at the hearing. The magistrate found that the Government had "made a sufficient showing under United States v. Powell, 379 U.S. 48, 85 S.Ct. 248, 13 L.Ed.2d 112 (1964), and that the taxpayer (had) not met his burden under United States v. LaSalle National Bank, 437 U.S. 298, 98 S.Ct. 2357, 57 L.Ed.2d 221 (1978)," since a valid civil purpose existed to the investigation and there was no institutional commitment by the IRS to prosecute Meyers as a "tax protester." The magistrate also quashed the interrogatories served by Meyers, since he had been able to ask many of the same questions at the hearing. The district court, on April 30, 1980, adopted the magistrate's findings of fact and conclusions of law and ordered the respondent bank officers to comply with the summonses. Meyers appeals from this order.
 
 
 6
 United States v. Nelsen Steel & Wire Co.
 
 
 7
 This proceeding arises from an investigation begun in June, 1976, of the tax liabilities of Nelsen Steel & Wire Co., Daniel B. Nelsen, Sr., Daniel B. Nelsen, Jr., and Clifford D. Nelsen. Although the investigation originally concerned only the years 1974 and 1975, upon advice of the IRS agent in charge, the Government expanded its scope to include 1971 to 1973.[6] On May 13, 1977, the Government issued the contested summonses, which included the years 1971-1975. When the summonses were not complied with, the Government filed these enforcement actions in the Northern District of Illinois on November 30, 1977. The proceedings then followed the same course as the Kis case. Show cause orders were issued, and the individual taxpayers and their spouses were allowed to intervene. Instead of holding an immediate evidentiary hearing as in Kis and most other enforcement actions, the district court allowed the taxpayers and respondents discovery of certain documents and the ability to depose three IRS agents involved in the investigation. These depositions were completed by August, 1979. The taxpayers then requested further discovery, which the district court denied on February 28, 1980. Following briefing by both parties, the district court ordered enforcement of the summonses on June 11, 1980. Taxpayers appeal from this order.
 
 United States v. Anderson
 
 8
 This investigation of the income tax liabilities of Donald L. and Harriet H. Anderson for the years 1973 to 1975 led to a recommendation in February, 1978 of a criminal prosecution, as well as the assertion of civil fraud penalties and adjustments to their tax liabilities. IRS Regional Counsel, however, rejected the recommendation and urged further investigation. The case then was reassigned to Special Agent Leonard H. Lupa, who in June, 1978, issued summonses to the Andersons to obtain handwriting and handprinting exemplars.[7] They were considered to be necessary in order to determine who had made certain entries in the taxpayers' business records for the years in question.
 
 
 9
 The Andersons refused to comply with the summonses on July 7, 1978, and the Government petitioned for enforcement in the Southern District of Illinois on February 1, 1979. After a hearing, the district court denied enforcement because, although the summonses were issued in good faith, the Government lacked the authority to compel the production of handwriting exemplars. While the Government's appeal from that order was pending, the United States Supreme Court held, in United States v. Euge, 444 U.S. 707, 100 S.Ct. 874, 63 L.Ed.2d 141 (1980), that handwriting exemplars could be obtained under section 7602. Following a remand by this court, the district court ordered enforcement on June 2, 1980. The district court, this court, and the Supreme Court all denied stays of enforcement of the district court's order, so the Andersons appeared before Special Agent Lupa on August 21, 1980, and complied with the summonses. The Government subsequently moved to dismiss this appeal as moot. The motion was argued along with the Andersons' appeal on the merits.
 
 United States v. Salkin
 
 10
 In the course of an investigation into the income tax liabilities of Jack Salkin, summonses for various books and records were issued to him in his capacities as president of two close corporations and also to First State Bank of Chicago, with which he had conducted business. Salkin failed to comply with his summonses and intervened to prevent compliance by the bank, and the Government began enforcement proceedings in the Northern District of Illinois in December, 1978. Salkin denied the allegations in the Government's petitions, but he failed to allege any specific facts in rebuttal. He then filed notices of depositions of the special agents involved in the investigation, served a set of interrogatories on each agent, and requested production of certain documents in Government files. The district court quashed the interrogatories and the request for document production, but it permitted the depositions. On August 17, 1979, following the depositions, Salkin filed amended answers that included some facts developed through the discovery.
 
 
 11
 The Government moved for summary judgment in September and October, 1979. The district court denied these motions on December 6, 1979. The court's decision noted that while the Government had made out its prima facie case for enforcement as required in Powell, supra, summary judgment was inappropriate because Salkin had raised a genuine issue of fact regarding the Government's purpose in pursuing the investigation at that time. Salkin had alleged that the IRS had abandoned the pursuit of a civil tax determination. The court therefore ordered an evidentiary hearing on the merits of the enforcement petitions.
 
 
 12
 At the opening of the hearing on April 1, 1980, the Government announced that it did not intend to present any further evidence, since the court had already found that it had demonstrated a prima facie case. The court then granted Salkin's oral motion to dismiss the actions pursuant to Rule 41(b), Federal Rules of Civil Procedure. The court ruled that the affidavits of the agents involved in the investigation were not evidence and that the Government had therefore not presented any evidence. The court dismissed the actions on the date of the hearing. The Government appeals.
 
 II
 
 13
 Before we discuss the substantive issues raised in these appeals, we must first decide whether the appeal in United States v. Anderson has been mooted by the taxpayers' compliance with the summons to produce handwriting exemplars. The Andersons contend that the appeal is not moot for several reasons. The investigation of their tax liabilities is still continuing, and therefore the controversy between the parties is still alive. They argue that the subject of the appeal the enforceability of the summons is thus "capable of repetition, yet evading review,"[8] for other summonses may be issued on the basis of the same good faith representations made by the Government. The Andersons point out that continued refusal to comply with the order of the district court would have subjected them to sanctions for contempt of court, and litigants should not be required so to expose themselves to liability in order to avoid mootness.[9]
 
 
 14
 Every court of appeals that has considered this question, however, has held that compliance with an IRS summons moots an appeal of the enforceability of the summons.[10] We agree with this line of decisions. While there may be an ongoing dispute between the IRS and the Andersons about their income tax liabilities, the particular controversy that is the subject matter of this appeal the enforceability of the summonses for handwriting exemplars no longer exists. The case or controversy to support the exercise of federal jurisdiction cannot be just any dispute between the parties but must concern the subject matter of the action. "Federal courts are without power to decide questions that cannot affect the rights of litigants in the case before them." North Carolina v. Rice, 404 U.S. 244, 246, 92 S.Ct. 402, 404, 30 L.Ed.2d 413 (1971) (emphasis added).
 
 
 15
 When, as in this case, the court could not grant any relief that would affect the legal rights of either party, no case or controversy exists. See DeFunis v. Odegaard, 416 U.S. 312, 317, 94 S.Ct. 1704, 1706, 40 L.Ed.2d 164 (1974). The Andersons contend that this court could grant them relief by declaring the summons to be invalid and by suppressing the handwriting exemplars and any evidence obtained as a result of their submission. Such a ruling, however, would ignore the well-established rule that questions of suppression should not be considered until the time when the Government seeks to use that evidence.[11] It would be highly speculative so to rule at this stage, for there is no guarantee that the Government will ever seek to use that evidence. It may never even bring any subsequent actions against the Andersons. As the First Circuit noted in a similar case,
 
 
 16
 The mere possibility of future criminal proceedings does not in itself justify present appellate consideration of the propriety of the summons. At this purely investigative stage, which may lead to civil proceedings or no proceedings at all, to quash the summons would be to prescribe amputation to forestall possible infection.
 
 
 17
 United States v. Lyons, 442 F.2d 1144, 1145 (1st Cir. 1971). If the Government does decide to prosecute the Andersons either in a civil or criminal proceeding, they may challenge the introduction of that evidence at that time, but there is no need, nor would it be proper, to decide that question now.[12]
 
 
 18
 Similarly, this case does not fit under the "capable of repetition, yet evading review" exception to the mootness doctrine. This exception is used only when it is certain that the same situation will recur.[13] It is possible that the Government may issue additional summonses to the Andersons based on the same representations made to support the issuance of these summonses, but we cannot assume that the Government will do so. To decide the issue now because of possible future summonses would be pure speculation on our part.
 
 
 19
 It is simply not correct, as the Andersons assert, that parties may not be compelled to choose between compliance with a court order and risking a contempt citation.[14] That is a choice that litigants are forced to make every day. Incurring a contempt citation may in many circumstances be the only means of gaining review when a question would otherwise become moot. The Supreme Court explicitly so recognized in United States v. Ryan, 402 U.S. 530, 533, 91 S.Ct. 1580, 1582, 29 L.Ed.2d 85 (1971), in which it held that interlocutory review of the propriety of a grand jury subpoena would be unavailable when the respondent could "refuse compliance and ... obtain full review of his claims" as a defense to a contempt citation. The Court noted, "We have consistently held that the necessity for expedition in the administration of criminal law justifies putting one who seeks to resist the production of desired information to a choice between compliance with a trial court's order to produce prior to any review of that order, and resistance to that order with the concomitant possibility of an adjudication of contempt if his claims are rejected on appeal." Id.[15] These principles are not limited to the criminal field. Interlocutory review of subpoenas issued for discovery under Fed.R.Civ.P. 45 may also be obtained only as a defense to a contempt citation.[16]
 
 
 20
 Nothing in In re Special April 1977 Grand Jury, 581 F.2d 589 (7th Cir.), cert. denied, 439 U.S. 1046, 99 S.Ct. 721, 58 L.Ed.2d 705 (1979), requires a holding to the contrary. That decision permitted a post-compliance appeal of an order enforcing grand jury subpoenas, but it is distinguishable in one significant respect.[17] In that case, the subpoenas were directed at members of the staff of appellant former Illinois Attorney General William Scott, not to Scott himself. It would have been unreasonable to require those staff members, who had no personal interest in resisting the subpoenas, to expose themselves to contempt by refusing to comply. That same logic compelled the Supreme Court in Perlman v. United States, 247 U.S. 7, 12-13, 38 S.Ct. 417, 419-20, 62 L.Ed. 950 (1918), to allow immediate review of an order directing a third party to produce exhibits, "for the custodian could hardly have been expected to risk a citation for contempt in order to secure (appellant) an opportunity for judicial review." In the present case, the Andersons certainly had a strong personal interest in the summons. It was their decision to comply rather than risk a contempt citation, and they cannot complain of the consequences now.[18]
 
 
 21
 This court's recent decision in Marshall v. Milwaukee Boiler Mfg. Co., Inc., 626 F.2d 1339 (7th Cir. 1980), is also distinguishable from the present case. The Milwaukee Boiler decision was based upon the particular nature of the Occupational Safety and Health Act, which was the focus of the controversy there. In that case, appellants sought suppression of the results of an inspection that they had permitted only after the district court had cited them for contempt. This court noted that under the penalty provisions of the Act, the penalties grew more substantial for each repeated violation. Any citation for a violation by OSHA that was based upon an illegitimate inspection would therefore have serious collateral consequences.[19] In the present case, on the other hand, if the Andersons' summonses were improper, no collateral consequences exist that could not be remedied by a timely-filed suppression motion.
 
 
 22
 Because we find that the appeal in United States v. Anderson is moot, we remand that case to the district court with instructions that that court vacate its summons enforcement order.[20] This procedure will permit the Andersons to move to suppress the handwriting exemplars and any evidence derived therefrom if and when the Government seeks to use that evidence. That will be the proper time for a court to consider the issues raised in this appeal.[21]
 
 III
 
 23
 The taxpayers in these actions raise many same issues on appeal. They all challenge the sufficiency of the prima facie case presented by the Government and contend that the Government did not meet the standards established by the Supreme Court in United States v. Powell, 379 U.S. 48, 85 S.Ct. 248, 13 L.Ed.2d 112 (1964). They further argue that even if the Government did meet its burden, they have presented enough evidence, for example, of an institutional purpose to prosecute them criminally to rebut effectively the prima facie case under the tests enunciated in United States v. LaSalle National Bank, 437 U.S. 298, 98 S.Ct. 2357, 57 L.Ed.2d 221 (1978). The taxpayers also challenge the varying limitations on discovery imposed by the district courts in each of the actions. Some of the cases present issues that appeared in their cases alone; for example, appellants in the Nelsen Steel case challenge the decision to reopen the previously audited tax years. We shall treat all of these issues in the order in which they will occur in an ordinary IRS summons enforcement case: first, the Government's responsibility to prove a prima facie case, and then the taxpayer's burden to rebut the Government's showing of good faith.
 
 
 24
 In discussing the relative burdens of the parties in summons enforcement actions, we cannot stress too emphatically that these proceedings are intended to be summary in nature. They occur, after all, at only the investigative stage of any action against a taxpayer, and no guilt or liability on the part of the taxpayer is established. The sole reason for the proceedings and for permitting the taxpayer to intervene under section 7609 is to ensure that the IRS has issued the summons for proper investigatory purposes under section 7602 and not for some illegitimate purpose (such as, for example, using a civil summons to gather evidence to be used solely in a criminal prosecution).[22]
 
 
 25
 For these reasons, the burden on the taxpayer to prove Government wrongdoing is significantly greater than that on the Government to show its legitimate purposes.[23] The action should be concluded quickly, so that the investigation may advance toward the ultimate determination of civil or criminal liability, if any. The extreme length of the actions now on appeal none are less than two years old, and the Nelsen Steel case has dragged on nearly four years demonstrates that these purposes are not being met. Considering the extraordinarily heavy burden that the Supreme Court has placed on taxpayers resisting enforcement, there is no reason for cases like these to endure for so long. Indeed, section 7609(h)(2) requires that these actions be concluded as quickly as possible. That section provides,
 
 
 26
 Except as to cases of greater importance, a proceeding brought for the enforcement of any summons, ... and appeals, take precedence on the docket over all cases and shall be assigned for hearing and decided at the earliest practicable date.
 
 
 27
 26 U.S.C. § 7609(h)(2) (1976). In order to meet this statutory prescription and to end the unnecessary delays that have burdened the enforcement powers of the IRS, it is clear that we must use our supervisory powers to mandate, in addition to the establishment of specific standards to be applied, a specific timetable for the resolution of these actions.[24]
 
 A.
 
 28
 Summons enforcement proceedings begin when the Government files a petition for enforcement, pursuant to 26 U.S.C. § 7604. Along with the petition, the Government must submit evidence of a prima facie case that the conditions exist for the issuance of a summons. If the Government meets that burden, the district court should within fifteen days[25] issue an order to the respondent to show cause why the summons should not be enforced.
 
 
 29
 United States v. Powell, supra, established the elements of the prima facie case that the Government must present. The burden is a slight one, for the statute must be read broadly in order to ensure that the enforcement powers of the IRS are not unduly restricted.[26] In order to gain the issuance of a show cause order, the Service does not need to meet any standard of probable cause, even if the three-year statute of limitations on ordinary tax liabilities has expired. It must show only
 
 
 30
 (1) that the investigation will be conducted pursuant to a legitimate purpose, (2) that the inquiry may be relevant to the purpose, (3) that the information sought is not already within the Commissioner's possession, and (4) that the administrative steps required by the Code have been followed in particular, that the "Secretary or his delegate," after investigation, has determined the further examination to be necessary and has notified the taxpayer in writing to that effect.
 
 
 31
 Powell, supra, 379 U.S., pp. 57-58, 85 S.Ct. pp. 254-55.[27] The Government ordinarily proves these four elements by affidavits of the agents involved in the investigation. No more than that is necessary to make the prima facie case.[28]
 
 B.
 
 32
 In United States v. Kis and United States v. Salkin, the Government met its burden of proof by providing affidavits attesting that the summoned materials were relevant to its investigations and not in its possession, that the administrative requirements had been satisfied, and that the investigations had a legitimate civil purpose of ascertaining the correct tax liabilities of the taxpayers for the years in dispute. Any contentions by the taxpayers to the contrary are without merit. As Powell made clear, the Service does not need to provide any more evidence at this initial stage of the proceedings. Both taxpayers, Meyers and Salkin, as well as those in United States v. Nelsen Steel, also raise questions concerning the institutional purpose of the IRS with respect to the commencement of criminal prosecutions. These questions must be considered by the court in the rebuttal stage of the proceedings, not in these initial stages, for the burden is on the taxpayer to disprove the Government's possession of a valid civil purpose. LaSalle National Bank, supra, 437 U.S. p. 316, 98 S.Ct. p. 2367. The assertions by affidavit of a valid civil purpose are adequate to show a prima facie case that would support the issuance of a show cause order.
 
 
 33
 The taxpayers in Nelsen Steel contend that the Government did not demonstrate that the summoned material in that case was relevant to the IRS investigation. They argue that the tax records of their spouses are not relevant to their own tax liabilities, and they challenge the relevance of the corporate records of D. Nelsen & Co., whose tax liabilities are not under investigation. While district courts must take "seriously their obligation to apply ... (the relevance) standard to fit particular situations, either by refusing enforcement or narrowing the scope of the summons," United States v. Bisceglia, 420 U.S. 141, 146, 95 S.Ct. 915, 919, 43 L.Ed.2d 88 (1975), the threshold of relevance is a low one. Section 7602, which authorizes a summons for "any books, papers, records, or other data which may be relevant ... to such inquiry" (emphasis added), gives the IRS broad summons power, similar to the inquisitorial power of a grand jury.[29] The Government therefore need show only that the inspection of the desired records "might throw light" upon the correctness of the taxpayer's return and liabilities. United States v. Turner, 480 F.2d 272, 279 (7th Cir. 1973).[30] The Government met that burden in Nelsen Steel through the affidavit of the special agent in charge, who attested that the requested materials were relevant.[31] Moreover, as the district court correctly found, the description of the items indicated their relevance.
 
 
 34
 Taxpayers in Nelsen Steel also challenged the adequacy of the Government's showing that the documents sought are not already in its possession. The Government admits that the affidavits of the agents submitted with the petitions for enforcement did not cover this point. As light as the burden is on the Government to prove its prima facie case in this regard, it must meet that burden. It has not done so in this case. An assertion by an agent during a deposition that he only has access to copies of some of the documents sought is not sufficient to make out a prima facie case.[32] We therefore remand Nelsen Steel for the limited purpose of hearing evidence, by affidavit or otherwise, concerning the Government's possession of the summoned materials.[33] See United States v. Marine Midland Bank of New York, 585 F.2d 36, 38-39 (2d Cir. 1978).
 
 
 35
 The Nelsen Steel taxpayers further contend that the summons should not have been enforced with respect to retained copies of Forms 1099, which are filed with the IRS. These forms reflect various types of non-wage income paid to the taxpayer, such as interest income paid by a bank or investment dividends. They are filed with the IRS by the individual or institution that is the source of the payments, not by the taxpayer, and the IRS files them in the same manner. They are not cross-indexed by the taxpayer's name, so they are "as a practical matter, neither accessible to nor available to (the) IRS." United States v. First National Bank of New Jersey, 616 F.2d 668, 674 (3d Cir.), cert. denied, sub nom. Levey v. United States, 447 U.S. 905, 100 S.Ct. 2987, 64 L.Ed.2d 854 (1980). We hold that the information contained therein is not therefore already within the Government's possession for purposes of a prima facie case under Powell.[34] As the Third Circuit stated in reaching the same result in that case, "The purpose of Powell ... is a desire to prevent abuse of the administrative summons process and harassment of the taxpayer." Id.[35] When information is not otherwise available, as here, there is no such abuse or harassment in requiring the taxpayer to produce his own copies of the Forms 1099, which are more easily located than the Government's copies.
 
 IV
 
 36
 The taxpayer will have thirty days to make his response after the district court has issued its show cause order. The burdens of production and of proof shift at that time to the taxpayer, and the Supreme Court established that the burden is "a heavy one." LaSalle National Bank, supra, 437 U.S. p. 316, 98 S.Ct. p. 2367. The taxpayer must "establish any defenses or ... prove that enforcement would constitute an abuse of the court's process." United States v. Genser, 582 F.2d 292, 302 (3d Cir. 1979) (Genser I ).[36] He must "prove a lack of good faith, that the government has abandoned in the institutional sense its pursuit of possible civil penalties." United States v. Moll, 602 F.2d 134, 138 (7th Cir. 1979). The taxpayer must do more than just produce evidence that would call into question the Government's prima facie case. The burden of proof in these contested areas rests squarely on the taxpayer. As the Third Circuit observed, "LaSalle may not have closed the door in the taxpayer's face, but neither did it leave much more than a very slight opening." United States v. Garden State National Bank, 607 F.2d 61, 70 (3d Cir. 1979).
 
 A.
 
 37
 Two circuits have discussed in great detail the taxpayer's burden at this point. The Third Circuit, in a series of cases culminating in Garden State, id., has placed a very strict burden on the taxpayer. It requires that the taxpayer answer the Government's case through responsive pleadings, supported by affidavits, that allege specific facts in rebuttal. Those facts must permit at least an inference that some wrongful conduct by the Government exists.[37] Mere allegations of bad faith will not suffice;[38] nor will legal conclusions or memoranda of law. Any uncontested allegations of the Government's must be accepted as admitted. "Moreover, if at this stage the taxpayer cannot refute the government's prima facie Powell showing or cannot factually support a proper affirmative defense, the district court should dispose of the proceeding on the papers before it and without an evidentiary hearing." Id., p. 71.[39]
 
 
 38
 The Third Circuit permits a limited amount of preliminary discovery in order to assist the taxpayer in meeting this burden. He may discover:
 
 
 39
 (1) the identities of the investigating agents,
 
 
 40
 (2) the date the investigation began,
 
 
 41
 (3) the dates the agent or agents filed reports recommending prosecution,
 
 
 42
 (4) the date the district chief of the Intelligence Division or Criminal Investigation Division reviewed the recommendation,
 
 
 43
 (5) the date the Office of Regional Counsel referred the matter for prosecution,
 
 
 44
 (6) the dates of all summonses issued under 26 U.S.C. § 7602, (and)
 
 
 45
 (7) the nature of any contacts, relating to and during the investigation, between the investigating agents and officials of the Department of Justice.
 
 
 46
 Id., quoting United States v. Genser, 595 F.2d 146, 152 (3d Cir. 1979) (Genser II ). Quoting Genser II further, the court goes on to say, "If the taxpayer's evidence reveals: '(1) that the IRS issued summonses after the investigating agents recommended prosecution, (2) that inordinate and unexplained delays in the investigation transpired, or (3) that the investigating agents were in contact with the Department of Justice,' the district court must then permit further investigation." Id.
 
 
 47
 The Fifth Circuit, in United States v. Harris, 628 F.2d 875 (5th Cir. 1980), adopts a slightly more lenient approach towards the taxpayer's burden. While it agrees that the taxpayer's right to an adversary hearing is not absolute, it permits the taxpayer to gain such a hearing through the mere allegation of bad faith on the part of the Government. Id., p. 879.[40] Although it adds that it prefers the specific allegation of supporting facts, it does not require such specifics since the taxpayer is not always entitled to discovery before the hearing. The court reasons, "The taxpayer might be placed in the unfair dilemma of having to provide supporting facts, but having no way to obtain those facts." Id., p. 880, n.6.
 
 
 48
 We agree with the approach of the Third Circuit, for it more accurately reflects Congress's concern that summons enforcement proceedings be concluded rapidly, while at the same time the taxpayer is protected from summonses that may be an abuse of process.[41] Although we agree with the Fifth Circuit that we do not want to put the taxpayer in the anomalous position of having to allege specific facts when he has no means to gather that information through discovery, the basic discovery that the Third Circuit allowed in Garden State solves that dilemma.[42] All the taxpayer needs to do is develop facts from which a court might infer a possibility of some wrongful conduct by the Government. He need not be able to prove that the wrongful conduct in fact exists. This inference could be drawn from any of the factors cited in Garden State or by any other evidence that the taxpayer might have, such as an offer to settle a collateral dispute. If the taxpayer cannot develop even the evidence necessary to meet this standard, then an evidentiary hearing would be a waste of judicial time and resources.[43]
 
 B.
 
 49
 If the taxpayer can present enough specific facts to meet this standard, he is entitled to an adversarial hearing. This hearing should be held within sixty days after the filing of his response. At the hearing, the Government can make its prima facie case through the introduction into evidence of the affidavits submitted with the petition for enforcement that began the proceedings. The Government could also present other evidence, testimonial or otherwise, to counter the specific allegations made by the taxpayer that were sufficient to warrant the holding of the hearing. The taxpayer would then be able to present his case, which would include the specific allegations made in his responsive pleading. The taxpayer would also be able to examine under oath the agents responsible for the investigation and any other witnesses he may call. While we do not wish to circumscribe the discretion of the district court in conducting the hearing, the court should not permit the hearing to become a pure fishing expedition by the taxpayer. The testimony he seeks should be related to some possible abuse of process as could be inferred from previously presented evidence. The court may within its discretion limit testimony if the questioning moves too far afield.
 
 
 50
 As we noted at the beginning of this section, the taxpayer bears an extraordinarily heavy burden at the hearing. He can succeed only by proving by a preponderance of the evidence some improper use of the summons by the IRS. The most common ground for challenging an IRS summons and one that is raised in each of the cases presently on appeal is that the IRS seeks the information in the summoned documents for use solely in a criminal prosecution. As the Third Circuit noted in Garden State, however, when "the IRS has not recommended criminal prosecution to the Justice Department and the investigating agent has not recommended prosecution to his superiors within the Service, the taxpayer bears an almost impossible burden to resist enforcement of the summons." Id., pp. 66-67 (emphasis in original).
 
 
 51
 The Supreme Court created this heavy burden in Donaldson v. United States, 400 U.S. 517, 91 S.Ct. 534, 27 L.Ed.2d 580 (1971), and clarified it in LaSalle National Bank, supra. In Donaldson, the Court declared authoritatively, "Congress clearly authorized the use of the summons in investigating what may prove to be criminal conduct." Id., p. 535, 91 S.Ct. p. 544. The Court refused to make the appearance of a special agent into the investigation a point of distinction between civil and criminal purposes of the investigation.[44] "To draw a line where a special agent appears would require the Service, in a situation of suspected but undetermined fraud, to forego either the use of the summons or the potentiality of an ultimate recommendation for prosecution. We refuse to draw that line and thus to stultify enforcement of federal law." Id., pp. 535-36, 91 S.Ct. p. 545. The Court repeated this determination two years later in Couch v. United States, 409 U.S. 322, 326, 93 S.Ct. 611, 614-15, 34 L.Ed.2d 579 (1973), where it stated, "It is now undisputed that a special agent is authorized, pursuant to 26 U.S.C. § 7602, to issue an Internal Revenue summons in aid of a tax investigation with civil and possible criminal consequences." No other result is possible, for "Congress has created a law enforcement system in which criminal and civil elements are inherently intertwined." LaSalle National Bank, supra, 437 U.S. p. 309, 98 S.Ct. p. 2363.[45]
 
 
 52
 LaSalle further undercut the taxpayer's ability to resist summons enforcement. It held, among other things, that the personal intent of the agent issuing the summons is also irrelevant to the enforceability of the summons. An agent's responsibilities are rarely wholly civil or wholly criminal, and an inquiry into the agent's personal motives would both frustrate the enforcement policy of the Service and would unreasonably delay the enforcement proceedings. The proper inquiry, LaSalle held, is into the institutional policy of the IRS. Id., p. 316, 98 S.Ct. p. 2367. The Court created a prophylactic rule that any summons issued after the IRS has made a formal recommendation to the Justice Department to proceed with criminal prosecution shall be deemed to have been issued solely for criminal purposes, even if the Service intended to seek civil penalties as well. Id., pp. 311-12, 98 S.Ct. pp. 2364-65.[46] Short of such a formal recommendation,[47] however, the taxpayer would bear the heavy burden "to disprove the actual existence of a valid civil tax determination or collection purpose by the Service." Id., p. 316, 98 S.Ct. p. 2367.
 
 
 53
 At the time of the summons enforcement hearing, therefore, if the IRS has not yet made a recommendation for criminal prosecution to the Justice Department, and if there is no reason to suspect that such a recommendation is being unduly delayed, "the party opposing the summons (must) establish that the inquiry has no civil purpose" whatsoever. United States v. Moll, supra, p. 139 (emphasis added).[48] The mere existence of a concurrent criminal purpose is irrelevant to the decision to be made at the hearing.[49] If the taxpayer cannot prove at the hearing that the IRS has abandoned any institutional pursuit of a civil tax determination, the district court must order enforcement of the summons at that time. Id., p. 138.
 
 C.
 
 54
 There may be a few cases in which the district court is unable to decide, on the basis of the evidence and testimony presented at the hearing, whether the summons should be enforced or denied. Only in those particular cases should the taxpayer be permitted any additional discovery beyond that laid out in Garden State.[50] It is clear that the district court may limit discovery in a summons enforcement proceeding.[51] As we have discussed, some basic discovery should be permitted the taxpayer before he must make his initial response to the petition for enforcement. No discovery through depositions or interrogatories is necessary, however, between that response and the evidentiary hearing, if any, for any testimony that could be conducted then could be conducted just as easily in open court during the hearing.[52] If the court cannot decide the merits of the enforcement petition at the hearing, then further discovery would clearly be helpful to the ultimate resolution of the case. The district court should therefore permit some discovery at this stage. The court can always limit this discovery, of course, if it is unduly burdensome.
 
 
 55
 Any discovery can be completed without a great burden on either party within sixty days after the initial evidentiary hearing. The district court should then hold a final evidentiary hearing on the petition to enforce the summons within thirty days after the completion of discovery. The burden at the final hearing would still, of course, rest upon the taxpayer, for LaSalle makes clear that it is his responsibility to prove that issuance of the summons would constitute an abuse of process.
 
 V
 
 56
 Applying these standards to the cases before us, the summonses in the Kis and Salkin cases must be enforced. (The summonses in the Nelsen Steel case should also be enforced if the Government is able to prove on remand that it is not in possession of the information summoned.) As we discussed, supra, Part IIIB, the Government made its prima facie case in each of these actions (except, again, with respect to the lack of possession in the Nelsen Steel case). The taxpayers failed to meet their burden of either disproving the prima facie case or proving a valid affirmative defense. They did not meet their burden because, while they argued that the IRS had an institutional commitment to prosecute them, they never made a showing that the Service had abandoned its civil purposes entirely.[53] In all of them, the IRS still sought the information summoned in order to make proper civil tax determinations, and no recommendation had yet been made to the Department of Justice that the taxpayers be prosecuted criminally; nor did the taxpayers make any showing that such a recommendation was being unduly delayed in order to gather additional evidence for the prosecution. LaSalle requires no more.
 
 
 57
 All of the taxpayers also contend that they were entitled to greater discovery than was allowed, but as we have seen, the district court may unquestionably limit discovery in summons enforcement proceedings. They were all given hearings at which they were able to ascertain virtually all of the information that they had sought to discover. This questioning included the basic prehearing discovery that we have permitted. See supra, Part IVA. The taxpayers in Salkin and in Nelsen Steel were also granted discovery in addition to the evidentiary hearing. The district courts thus gave the taxpayers more than ample opportunity to try to develop a defense that could meet the stringent standards of LaSalle. They were simply unable to do so.
 
 
 58
 As this opinion makes clear, the summary judgment procedure utilized by the district court in United States v. Salkin were entirely inappropriate to summons enforcement procedures. While these proceedings are intended to be summary in nature, the burden that must be met by a taxpayer resisting enforcement is significantly more stringent than that of a party opposing a motion for summary judgment. The district court therefore erred as a matter of law in dismissing the action under Rule 41(b). The Government had already made its prima facie case. The burden thus rested on the taxpayer to prove an improper use of the summons. Salkin never met that burden.
 
 
 59
 In addition, the Government was not barred from reopening the investigation into the previously closed tax years in its inquiry in United States v. Nelsen Steel. Under 26 U.S.C. § 6501(e), the ordinary three-year statute of limitations period can be extended to six years when there is a substantial understatement of income. In United States v. Powell, supra, 379 U.S. p. 58, 85 S.Ct. p. 255, the Supreme Court specifically held that a taxpayer's burden of showing an abuse of process in a summons enforcement proceeding is not met by a mere showing that the statute of limitations for ordinary deficiencies has run. More importantly, taxpayers ought not be allowed to raise such issues in a summons enforcement proceeding. These extraneous issues tend only to delay the advancement of the action and to distract the court's attention from the primary issue that must be considered in these proceedings: whether the IRS has a legitimate purpose in issuing the summons. If the taxpayer has a claim regarding an allegedly improper reopening of an investigation, he may raise it in a separate action.[54]
 
 VI
 
 60
 In summary, the procedures and requirements for summons enforcement proceedings are:
 
 
 61
 1. The Government must first prove its prima facie case under Powell. It may do so by affidavit or by other evidence at the time it files the petition for enforcement that begins these actions.
 
 
 62
 2. Within thirty days, the taxpayer must respond by alleging specific facts in rebuttal of the Government's prima facie case or in support of an affirmative defense. The taxpayer will be assisted in meeting this burden by the gathering of certain basic information through discovery, as outlined in Garden State National Bank, supra.
 
 
 63
 3. If the taxpayer has not alleged specific facts that permit an inference of some improper purpose on the part of the Government, the district court should promptly order enforcement of the summons. If the taxpayer has met this initial burden, the district court must order a hearing on the petition within sixty days after the taxpayer's filing of his responsive pleadings. Only very limited discovery of documents and no testimonial discovery may be conducted during this time period.[55]
 
 
 64
 4. At the hearing, the burden still rests heavily on the taxpayer to prove that the summons is issued for an improper purpose or that the Government has abandoned any civil purposes to its investigation whatsoever. In most cases in which a hearing is held, the district court should be able either to order or to deny enforcement of the summons at that time.
 
 
 65
 5. In the few cases in which resolution of the issues is still unclear after the hearing, the district court should permit the taxpayer additional discovery. This discovery, which can be limited by the district court in its discretion at any time, must be concluded within sixty days after the initial evidentiary hearing. A final evidentiary hearing, at which the taxpayer still bears the burden, must then be held within thirty days after the conclusion of discovery. The district court should reach its decision on the enforcement of the summons as promptly as possible following this hearing.
 
 
 66
 We affirm the enforcement of the summonses in United States v. Kis. We reverse the dismissal of the action in United States v. Salkin and remand that case with instructions to enter an order granting enforcement of the summonses there. We remand for a limited purpose United States v. Nelsen Steel for proceedings consistent with this opinion.[56] Finally, we remand United States v. Anderson with instructions to vacate the order granting enforcement of the summons as being moot.
 
 
 
 *
 The Honorable Robert J. Kunzig, Judge, United States Court of Claims, is sitting by designation
 
 
 [1]
 This opinion has been circulated pursuant to Circuit Rule 16(e) to all judges of this court in regular active service. No judge favored a rehearing en banc
 
 
 [2]
 See section 7602 of the Internal Revenue Code, 26 U.S.C. § 7602 (1976)
 
 
 [3]
 26 U.S.C. § 7609 (1976)
 
 
 [4]
 26 U.S.C. § 7604(b) (1976)
 
 
 [5]
 These same declarations of good faith were made in the petitions that commenced all of the actions under review here. See the discussion, infra, Part IIIA, of the Government's prima facie case under United States v. Powell, 379 U.S. 48, 85 S.Ct. 248, 13 L.Ed.2d 112 (1964)
 
 
 [6]
 Nelsen Steel had previously been audited for these tax years, had been assessed a deficiency which was paid, and the years had been closed. Reinspection letters were issued to the taxpayers involved in this case
 
 
 [7]
 Lupa had not conducted the original investigation and was only marginally involved in the recommendation for criminal prosecution
 
 
 [8]
 Southern Pacific Terminal Co. v. ICC, 219 U.S. 498, 31 S.Ct. 279, 55 L.Ed. 310 (1911); Sosna v. Iowa, 419 U.S. 393, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975)
 
 
 [9]
 See In the Matter of the Special April 1977 Grand Jury, 581 F.2d 589, 591 (7th Cir.), cert. denied, sub nom. Scott v. United States, 439 U.S. 1046, 99 S.Ct. 721, 58 L.Ed.2d 705 (1978)
 
 
 [10]
 First Circuit: United States v. Arthur Andersen & Co., 623 F.2d 720 (1st Cir. 1980); United States v. Lyons, 442 F.2d 1144 (1st Cir. 1971). Second Circuit: United States v. Deak-Perera Banking Corp., 610 F.2d 89 (2d Cir. 1979). Third Circuit: Vesco v. SEC, 462 F.2d 1350 (3d Cir. 1972) (analogous SEC subpoena case). Fourth Circuit: Kurshan v. Riley, 484 F.2d 952 (4th Cir. 1973). Fifth Circuit: Lawhon v. United States, 390 F.2d 663 (5th Cir. 1968); United States v. First State Bank of Clute, 626 F.2d 1227 (5th Cir. 1980). Sixth Circuit: United States v. Patmon, 630 F.2d 458 (6th Cir. 1980). Eighth Circuit: United States v. Olson, 604 F.2d 29, 31 (8th Cir. 1979); United States v. First National Bank of Sturgis, S. D., 587 F.2d 909, 910 (8th Cir. 1978); Barney v. United States, 568 F.2d 116 (8th Cir. 1978). Ninth Circuit: SEC v. Laird, 598 F.2d 1162 (9th Cir. 1979) (analogous SEC subpoena case)
 United States v. Friedman, 532 F.2d 928 (3d Cir. 1976), the only decision to hold otherwise, is distinguishable from this case and the others cited above, because it involved a number of consolidated appeals, and respondents had not complied with all of the summonses involved. A live controversy therefore still existed between the parties as to the propriety of the summonses.
 
 
 [11]
 See, e. g., G. M. Leasing Corp. v. United States, 429 U.S. 338, 359, 97 S.Ct. 619, 632, 50 L.Ed.2d 530 (1977); Donaldson v. United States, 400 U.S. 517, 531, 91 S.Ct. 534, 542, 27 L.Ed.2d 580 (1971); United States v. Blue, 384 U.S. 251, 86 S.Ct. 1416, 16 L.Ed.2d 510 (1966)
 
 
 [12]
 See Donaldson, supra, 400 U.S. p. 531, 91 S.Ct. p. 542 ("to the extent (he) may claim an abuse of process, (he) may always assert ... that claim in due course at its proper place in any subsequent trial."). See also Duke, "Prosecutions for Attempts to Evade Income Tax," 76 Yale L.J. 1, 62 (1966)
 
 
 [13]
 See, e. g., Sosna v. Iowa, supra (other persons will be adversely affected by one-year residence requirement in Iowa divorce statute); Gannett v. DePasquale, 443 U.S. 368, 99 S.Ct. 2898, 61 L.Ed.2d 608 (1979) (sufficient likelihood that newspaper will again be enjoined from publishing aspects of criminal proceeding)
 
 
 [14]
 See United States v. Arthur Andersen & Co., supra, pp. 723-24
 
 
 [15]
 See, e. g., Cobbledick v. United States, 309 U.S. 323, 60 S.Ct. 540, 84 L.Ed. 783 (1940); Alexander v. United States, 201 U.S. 117, 26 S.Ct. 356, 50 L.Ed. 686 (1906)
 
 
 [16]
 Ryan v. Commissioner, 517 F.2d 13, 18-20 (7th Cir.), cert. denied, 423 U.S. 892, 96 S.Ct. 190, 46 L.Ed.2d 124 (1975); Grinnell Corp. v. Hackett, 519 F.2d 595, 596-98 (1st Cir.), cert. denied sub nom. Chamber of Commerce v. United Steel Workers of America, 423 U.S. 1033, 96 S.Ct. 566, 46 L.Ed.2d 407 (1975); Wright & Miller, Federal Practice & Procedure § 2463 (1971)
 
 
 [17]
 Besides the difference in the nature of the personal interests involved in Grand Jury and in this case, as discussed in the text above, Grand Jury is also distinguishable because it was based upon two decisions that involved prior restraints on speech. Nebraska Press Assoc. v. Stuart, 427 U.S. 539, 96 S.Ct. 2791, 49 L.Ed.2d 683 (1976); First National Bank of Boston v. Bellotti, 435 U.S. 765, 98 S.Ct. 1407, 55 L.Ed.2d 707 (1978). Courts are quite correctly more wary of forcing litigants to choose between compliance and contempt in a First Amendment context, for the chilling effect of any such dilemma is considerable
 
 
 [18]
 We note that, while no stays have been entered in any of the other three appeals on review here, none of the affected parties have complied with the summons enforcement orders. They have, apparently, been willing to risk the consequences of noncompliance
 
 
 [19]
 We note also that neither party in Milwaukee Boiler argued that the case was moot
 
 
 [20]
 United States v. Munsingwear, Inc., 340 U.S. 36, 39-40, 71 S.Ct. 104, 106-107, 95 L.Ed. 36 (1950); County of Los Angeles v. Davis, 440 U.S. 625, 634, 99 S.Ct. 1379, 1384, 59 L.Ed.2d 642 (1979). See also United States v. Olson, 604 F.2d 29 (8th Cir. 1979). Because of our resolution of United States v. Anderson, our subsequent discussion of the issues in summons enforcement proceedings will concern only the three other cases on appeal
 
 
 [21]
 Cf. United States v. Friedman, 532 F.2d 928, 931 (3d Cir. 1976)
 
 
 [22]
 United States v. LaSalle National Bank, 437 U.S. 298, 316, 98 S.Ct. 2357, 2367, 57 L.Ed.2d 221 (1978) ("The purpose of the good faith inquiry is to determine whether the agency is honestly pursuing the goals of § 7602 by issuing the summons.")
 
 
 [23]
 Id
 
 
 [24]
 The Supreme Court has tried to expedite these proceedings as well. LaSalle National Bank, supra, p. 316, 98 S.Ct. p. 2367. See United States v. Harris, 628 F.2d 875 (5th Cir. 1980)
 
 
 [25]
 This timetable, as all others in this opinion, is hereby established in accordance with our supervisory powers. This deadline should give the district court adequate time to consider the merits of the Government's petition, for it need not look any further than the face of the petition and of the supporting affidavits. Orders to show cause were issued in all four of the cases on appeal well within this time period
 
 
 [26]
 United States v. Euge, 444 U.S. 707, 711, 100 S.Ct. 874, 878, 63 L.Ed.2d 141 (1980); United States v. Kendrick, 518 F.2d 842, 849 (7th Cir.), cert. denied, 423 U.S. 1016, 96 S.Ct. 449, 46 L.Ed.2d 387 (1975)
 
 
 [27]
 The last three of these elements relevance, possession, and satisfaction of the administrative process are self-explanatory and need no further enlightenment here. The existence and definition of a "legitimate purpose" is more complex; it is explained in our discussion of the taxpayer's burden of proof, infra, Part IVB
 
 
 [28]
 Affidavits are often the only supporting evidence for the issuance of a search or arrest warrant, which, as noted above, requires a higher standard of proof. Affidavits alone should therefore certainly be sufficient to prove a prima facie case in summons enforcement proceedings
 
 
 [29]
 United States v. Kendrick, supra; United States v. Turner, 480 F.2d 272, 278-79 (7th Cir. 1973); United States v. Joyce, 498 F.2d 592, 594 (7th Cir. 1974)
 
 
 [30]
 See also United States v. City National Bank & Trust Co., 642 F.2d 388 (10th Cir. 1981) (summoned materials are relevant if a "realistic expectation" exists that the materials will illuminate the accuracy of a tax return); United States v. Noall, 587 F.2d 123, 125 (2d Cir. 1978), cert. denied, 441 U.S. 923, 99 S.Ct. 2031, 60 L.Ed.2d 396 (1979) ("Congress acted advisedly in using the verb 'may be' rather than 'is' since the Commissioner cannot be certain the documents are relevant or material until he sees them.")
 
 
 [31]
 See United States v. Moon, 616 F.2d 1043, 1046 (8th Cir. 1980); United States v. Garden State National Bank, 607 F.2d 61, 68 (3d Cir. 1979)
 
 
 [32]
 The Government also seeks to prove it does not have possession of the documents through a "judicial admission" by taxpayers. In the taxpayers' memorandum in support of their motion for a stay pending appeal, they declared they would be irreparably injured if they were forced to turn over the summoned documents. The Government contends that there could be no irreparable injury if the IRS already had possession of them. While this argument is ingenious, it cannot make up for the Government's failure to prove its own prima facie case
 
 
 [33]
 For the sake of judicial economy, we remand this case for that limited purpose only, and we will consider all the other issues raised in this appeal. If the district court finds the Government is not already in possession of the documents sought, the court should order enforcement of the summonses
 
 
 [34]
 This court has never explicitly so held, but it required the same result in United States v. Turner, supra, in which the court ordered enforcement of a summons for names of the persons for whom a particular preparer had prepared income tax returns, even though the returns were in the possession of the IRS and signed by the preparer. The court noted, id., p. 274, that the special agent involved had testified that retrieval of the returns based upon the preparer's signature would be all but impossible. See also Donaldson v. United States, supra, 400 U.S. p. 519, 91 S.Ct. p. 536, in which the Supreme Court ordered enforcement of a summons that included Forms 1099 that presumably suffered the same problems as exist here
 
 
 [35]
 In United States v. Bank of California, 652 F.2d 780 (9th Cir. 1980), the Ninth Circuit affirmed a district court's holding that the IRS had not shown that Forms 1099 were not in the Commissioner's possession. This case is distinguishable on its facts from the present case, for it was based upon two factors that do not exist here: (1) The Government had not raised the contention in the district court; and (2) the affidavit of the IRS agent said the information was not in her possession, not that it was not in the possession of the IRS
 
 
 [36]
 "Such an abuse would take place if the summons had been issued for an improper purpose, such as to harass the taxpayer or to put pressure on him to settle a collateral dispute, or for any other purpose reflecting on the good faith of the particular investigation." United States v. Powell, supra, 379 U.S. p. 58, 85 S.Ct. p. 255
 
 
 [37]
 The court cites two hypothetical examples of such conduct: (1) "that a summons was issued at the request of the Justice Department," or (2) "that formal recommendations for prosecution were being delayed until a summons could be issued and enforced, solely to further a criminal prosecution." Garden State National Bank, supra, p. 71. See also LaSalle, supra, p. 317, and United States v. Genser, 595 F.2d 146, 150 (3d Cir. 1979) (Genser II )
 
 
 [38]
 United States v. National State Bank, 454 F.2d 1249, 1252 (7th Cir. 1972)
 
 
 [39]
 See also United States v. McCarthy, 514 F.2d 368, 373 (3d Cir. 1975). Powell refers to "the adversary hearing to which the taxpayer is entitled before enforcement is ordered." Id., 379 U.S. p. 58, 91 S.Ct. p. 255. See also Reisman v. Caplin, 375 U.S. 440, 449, 84 S.Ct. 508, 513, 11 L.Ed.2d 459 (1964). This hearing is not, however, automatic. While courts may have disagreed on the appropriate standard, they have agreed that the taxpayer must make some threshold showing to be entitled to the hearing
 
 
 [40]
 See also United States v. Wright Motor Co., Inc., 536 F.2d 1090, 1094 (5th Cir. 1976); United States v. Newman, 441 F.2d 165, 169 (5th Cir. 1971); United States v. Roundtree, 420 F.2d 845, 852 (5th Cir. 1970)
 
 
 [41]
 It also is more in keeping with the tenor of previous decisions in this circuit. See United States v. Moll, 602 F.2d 134 (7th Cir. 1979); United States v. Kendrick, supra; United States v. Joyce, supra; United States v. Turner, supra; United States v. Interstate Tool & Engineering Corp., 526 F.2d 59 (7th Cir. 1975); United States v. National State Bank, supra
 
 
 [42]
 The taxpayer should be able to conduct the basic discovery we permit within the thirty days he has to file his responsive pleadings. If he is unable to do so because of delay by the Government, the district court may extend his time for filing the response. The district court should view with extreme caution any other excuse given by the taxpayer for failure to conduct the discovery
 
 
 [43]
 While Powell contemplates an adversarial hearing, it certainly does not require one merely to permit a fishing expedition by the taxpayer
 
 
 [44]
 A special agent is one who works in the Criminal Investigation Division of the IRS, as opposed to a revenue agent, whose responsibilities are principally civil. In many investigations, a special agent and a revenue agent work together
 
 
 [45]
 See United States v. Moll, supra, p. 138 (7th Cir. 1979)
 
 
 [46]
 The Court recognized that even at the point of a referral the criminal and civil aspects of a tax fraud investigation do not diverge entirely, but it reasoned that such a prophylactic rule was necessary to prevent misuse of the summons process. LaSalle National Bank, supra, p. 312, 98 S.Ct. p. 2365
 
 
 [47]
 The line is drawn at the time of a formal recommendation by the IRS to the Justice Department, not at the time of a recommendation for prosecution made by the special agent to his district office. The agent's recommendation could, after all, be rejected, as it was in United States v. Anderson here. LaSalle National Bank, supra, p. 313, n.15, 98 S.Ct. p. 2365 n.15
 
 
 [48]
 See also United States v. First National Bank of Atlanta, 628 F.2d 871, 874 (5th Cir. 1980)
 
 
 [49]
 "It is not just an institutional commitment to recommend for prosecution that renders a summons issued under § 7602 invalid; rather, it is the absence of a civil purpose for that summons that triggers the LaSalle rule." United States v. Genser, 602 F.2d 69, 71 (3d Cir.), cert. denied, 444 U.S. 928, 100 S.Ct. 269, 62 L.Ed.2d 185 (1979) (Genser III )
 
 
 [50]
 Garden State National Bank, supra, p. 71, n.13; Genser I, supra, p. 302; United States v. McCarthy, supra, p. 376, n.10
 
 
 [51]
 United States v. Harris, supra, p. 883; United States v. Turner, supra, p. 275; United States v. Interstate Tool & Engineering Corp., supra, p. 62; United States v. National State Bank, supra, p. 1252
 
 
 [52]
 See Moore's Federal Practice, P 81.06(1) (2d ed. 1979) ("Since the agent can be questioned on this subject (the improper purpose defense) the use of depositions and interrogatories prior to the hearing is quite unnecessary and serves the sole purpose of delaying the IRS examination."). Some limited discovery of documents believed to be in the possession of the Service may be permitted before the hearing, but only if the taxpayer can make a positive showing that the particular documents are necessary to his defense and that they provide information that could not otherwise be obtained at the hearing. District courts must be wary before permitting such discovery that it is not being used as a dilatory tactic
 
 
 [53]
 See n.49, supra
 
 
 [54]
 Because of our reversal of the denial of enforcement in United States v. Salkin, we need not consider taxpayer Salkin's claim for attorneys' fees in that case. Taxpayer Meyers's contention that enforcement of the summonses in United States v. Kis would violate his Fifth Amendment rights has already been answered by this court in United States v. Turner, supra, pp. 276-78. We have considered all other arguments raised by taxpayers in these cases, and we find them all to be without merit
 
 
 [55]
 See n.52, supra
 
 
 [56]
 See n.33, supra. Costs are awarded to the Government as prevailing party in all cases, except for Nelsen Steel. In that case, each party bears its own costs