**JUDICIAL WATCH, INC.**

v.

**Charles O. ROSSOTTI, et al.**

**No. Civ.A. WMN–01–2672.**

United States District Court,
D. Maryland.

March 27, 2002.

---

David Barmak, Joanne B. Jarquin, Mintz, Levin, Cohn, Ferris, Glovsky and Popeo PC, Reston, VA, for plaintiff.

Stuart D. Gibson, United States Department of Justice, Washington, DC, for defendants.

*MEMORANDUM*

NICKERSON, District Judge.

Before the Court are Plaintiff's Motion to Stay or Enjoin Enforcement of Administrative Summons (Paper No. 11) and a Motion to Dismiss filed by Defendants Rossotti, Dorsey, Breslan, Hampel, and Miller ("Individual Defendants" or "Defendants") (Paper No. 13). The motions have been exhaustively briefed and are ripe for decision. Upon review of the pleadings and applicable case law, the Court determines that no hearing is necessary (Local Rule 105.6), and that Plaintiff's motion will be denied and Defendants' motion will be granted.

## I. BACKGROUND

This is a highly unusual case that, at its heart, is about an organization seeking to stop the Internal Revenue Service from auditing it. The claims set forth in Plaintiff's Amended Complaint [1] are in the form of a detailed chronology of events, much of which is recited here in order to provide context for this dispute.

Plaintiff describes itself as a "non-partisan legal 'watchdog' organization that relies on the Freedom of Information Act ('FOIA'), the civil discovery process, and court litigation, among other tools, to protect the American people from, and educate them about, corruption in government and abuses of power, and to enforce the principle that 'no one is above the law.'" Amended Complaint at ¶ 2. Judicial Watch was founded in 1994, and in 1995 obtained a ruling from the I.R.S. that it met the requirements for tax exemption as an organization described in 26 U.S.C.

---

1. Plaintiff's Amended Complaint, filed on January 9, 2002, contains factual allegations about events that occurred since Plaintiff filed its initial Complaint in September, 2001. Pursuant to Fed.R.Civ.P. 15(d), parties wishing to supplement their pleadings in such a fashion must file a motion, and the court must grant leave to file the amended pleading. Although Plaintiff failed to file a motion for leave to file, the Court finds that Defendants suffer no prejudice by the Court's acceptance of the Amended Complaint.

§ 501(c)(3).[2]  *See,* Amended Complaint at Exh. B.

In the amended complaint, Plaintiff describes some of its activities, stating that "Judicial Watch has filed over eighty public interest lawsuits concerning the President, Mrs. Clinton, and/or the Clinton Administration, and other high government officials of all political parties." Amended Complaint at ¶ 13. Plaintiff further states that its activities "are not limited to the Clinton Administration." *Id.* at ¶ 14. The complaint describes an alleged "pattern of abuses of power" by the Clinton Administration, which Judicial Watch says it uncovered, including the administration's manipulation of I.R.S. officials to retaliate against its political enemies by auditing them. *Id.* at ¶¶ 15, 16. These alleged abuses were documented by Judicial Watch in a September, 1998, report entitled "Crimes and Other Offenses Committed by President Bill Clinton Warranting His Impeachment and Removal from Elected Office." *Id.* at ¶ 17. Judicial Watch submitted the report to members of the U.S. House of Representatives Committee on the Judiciary, during impeachment proceedings against President Clinton in October, 1998. *Id.*

Just a few days later, Judicial Watch received a letter, signed by Defendant Dorsey, an I.R.S. agent, informing Plaintiff that it had been selected for an audit. *Id.* at ¶ 20. The letter explains that the purpose of the audit is, *inter alia,* "to determine that the organization is operating in the manner stated and for the purpose set forth in its application for recognition of exemption." *Id.* at Exh. A (October 5, 1998 Letter). Plaintiff claims that the document request accompanying the letter asking Judicial Watch to reveal the names, addresses, and political affiliations of its directors, was an "extraordinary demand" evidencing the retaliatory nature of the audit. *Id.* at ¶ 21. Plaintiff alleges that the audit letter was sent at the request of President Clinton's Executive Office, in retaliation for Judicial Watch's accusations. *Id.* at ¶ 23.

Since the receipt of the audit letter, Plaintiff has resisted the I.R.S.'s efforts to conduct the audit. On October 14, 1998, Plaintiff sent comprehensive FOIA requests to the I.R.S., seeking access to all documents that "refer or relate" to Judicial Watch or its founder "in any way." *Id.* at ¶ 25. According to Plaintiff, the I.R.S. has not fully responded to these requests. *Id.* Plaintiff also met with various I.R.S. officials, including some of the Defendants, in late 1998 and early 1999, to discuss the audit. At a November, 1998, meeting, Plaintiff alleges that Defendant Dorsey said the audit was "a hot potato" and that she had received phone calls from I.R.S. "higher ups" about it. *Id.* at ¶ 26. Plaintiff also claims that at a January, 1999 meeting, Defendant Breslan, another I.R.S. agent, told Judicial Watch representatives, "What do you expect when you sue the President?" and commented that if Judicial Watch scrutinizes the government, the government will scrutinize Judicial Watch. *Id.* at ¶¶ 27, 28.

---

**2.** The 501(c)(3) exemption applies, in pertinent part, to:

[c]orporations, and any community chest, fund, or foundation, organized and operated exclusively for religious, charitable, scientific, testing for public safety, literary, or educational purposes . . ., no part of the net earnings of which inures to the benefit of any private shareholder or individual, no substantial part of the activities of which is carrying on propaganda, or otherwise attempting to influence legislation . . ., and which does not participate in, or intervene in (including the publishing or distributing of statements), any political campaign on behalf of (or in opposition to) any candidate for public office.

In May, 1999, the I.R.S. refused Judicial Watch's request to meet with then-Commissioner Rossotti. *Id.* at ¶ 33. Plaintiff was also informed that its concerns about the audit being retaliatory had been forwarded to the Treasury Inspector General for Tax Administration (TIGTA), the internal monitor of I.R.S. activities. *Id.* At a later meeting with the Acting Director for Exempt Organizations, Defendant Steven Miller, Plaintiff claims that Mr. Miller "conceded that the I.R.S.'s conduct had created at least the appearance of a 'problem'." *Id.* at ¶ 35. Approximately one month later, in July of 1999, Plaintiff was informed by Defendant Agent Hampel that the audit was being withdrawn pending the TIGTA investigation.[3]

The next sequence of events set forth in the Amended Complaint describes a proceeding in litigation filed by Judicial Watch, in which a White House employee testified about the White House's failure to provide incriminating email evidence in response to subpoenas. *Id.* at ¶ 37. Plaintiff describes the result of this testimony as "a barrage of very negative press and legal ramifications for President and Mrs. Clinton and the White House." *Id.* at ¶ 39. According to Plaintiff, Defendant Hampel then "immediately" contacted Judicial Watch's outside counsel to "remind" him that Plaintiff was still on the "radar screen" for an audit. *Id.* at ¶ 40. Defendant Hampel allegedly issued another reminder a few months later, shortly after a court in the above-mentioned proceedings issued a ruling that was adverse to the Clinton administration. *Id.* at ¶ 43.

Following more correspondence[4] between Plaintiff and the I.R.S. during 2000, Defendant Miller agreed to further delay consideration of the audit until President Clinton left office on January 20, 2001. *Id.* at ¶¶ 45–48. On January 8, 2001, however, the I.R.S. sent Judicial Watch a letter stating that the audit was continuing, and asking that documents be submitted to the I.R.S. by January 30, 2001. *Id.* at Exh. I (January 8, 2001, Letter). Judicial Watch did not comply with this request, and proceeded to submit third, fourth, and fifth FOIA requests to the I.R.S., essentially requesting any and all documents related to Judicial Watch. *Id.* at ¶¶ 51, 52, and 54. Then, according to Plaintiff, the I.R.S. sent another document request to Judicial Watch in August, 2001, approximately three weeks after the organization filed suit against then-Commissioner Rossotti in a separate action. *Id.* at ¶ 56.

In September, 2001, Plaintiff filed the instant action against then-Commissioner Rossotti, four individual I.R.S. agents (Donna Dorsey, M. Peter Breslan, Wayne Hampel, and Steven T. Miller), and the I.R.S. itself.[5] The crux of Plaintiff's claims is that the I.R.S. audit is "retaliatory, politically-motivated, and unconstitutional." Amended Complaint at ¶ 1. Count 1 alleges that the audit violates Plaintiff's freedom of speech and association guaranteed by the First Amendment of the United States Constitution, by punishing Plaintiff for its political speech. Count 2 asserts a violation of Plaintiff's Fifth Amendment rights

---

**3.** According to the Individual Defendants, TIGTA completed two investigations into the propriety of the Judicial Watch audit, and exonerated all of the I.R.S. employees involved. *See,* Defs.' Mot. to Dismiss at 7. Plaintiff does not dispute this statement.

**4.** On April 14, 2000, Judicial Watch sent a second FOIA request to the I.R.S., and on

April 19, 2000, Judicial Watch received a renewed notice of the planned audit with a "voluminous document request." *Id.* at ¶¶ 45, 46.

**5.** The complaint originally also named the United States as a defendant, but the Amended Complaint does not.

to due process, and Count 3 brings a selective prosecution claim. These three counts name each of the Individual Defendants, and in them Plaintiff seeks monetary and injunctive relief.[6] More specifically, Plaintiff requests that "Defendants be preliminarily and permanently enjoined from pursuing the proposed retaliatory, politically-motivated audit and their other retaliatory actions." Amended Complaint, p. 23–24. Plaintiff identifies its damages as including the loss of staff hours and resources in responding to the proposed audit. *Id.*

On January 18, 2002, Judicial Watch was served by the I.R.S. with an administrative summons demanding production of documents within eight business days. Plaintiff did not comply with the summons, and has filed the instant motion to stay or enjoin any attempt by the I.R.S. to initiate administrative enforcement proceedings against Judicial Watch. A few days later, the Individual Defendants filed the instant motion to dismiss all claims against them.

## II. LEGAL STANDARD FOR MOTION TO DISMISS

When reviewing a motion to dismiss, the court must assume all of the allegations to be true, must resolve all doubts and inferences in favor of the plaintiff, and must view the allegations in a light most favorable to the plaintiff. *Edwards v. City of Goldsboro,* 178 F.3d 231, 243–44 (4th Cir. 1999). The complaint should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Finally, in ruling on the motion, the Court should consider only the allegations contained in the complaint, the exhibits to the complaint, matters of public record, and other similar materials that are subject to judicial notice. *Anheuser–Busch, Inc. v. Schmoke,* 63 F.3d 1305, 1312 (4th Cir. 1995), *vac. on other grounds,* 517 U.S. 1206, 116 S.Ct. 1821, 134 L.Ed.2d 927 (1996).

## III. DISCUSSION

### A. Injunctive Relief

The Individual Defendants argue that the Internal Revenue Code's Anti–Injunction Act ("the Act"), 26 U.S.C. § 7421(a), precludes this Court from exercising subject matter jurisdiction over Plaintiff's claims for injunctive relief. The Act provides that "no suit for the purposes of restraining the assessment or collection of any tax shall be maintained in any court by any person, whether or not such person is the person against whom such tax was assessed." 26 U.S.C. § 7421(a).[7] The Supreme Court has noted that although the Act has no recorded legislative history, "its language could scarcely be more explicit." *Bob Jones University v. Simon,* 416 U.S. 725, 736, 94 S.Ct. 2038, 40 L.Ed.2d 496 (1974). The Court has observed that the primary purpose of the Act is "the protection of the Government's need to assess and collect taxes as expeditiously as possible with a minimum of pre-enforcement judicial interference, 'and to require that the legal right to the disputed sums be determined in a suit for refund.'" *Id.* (*quoting Enochs v. Williams Packing & Navigation Co.,* 370 U.S. 1, 7, 82 S.Ct. 1125, 8 L.Ed.2d 292 (1962)).

Plaintiff first argues that this is not a suit "for the purposes of restraining the assessment or collection of any tax" and

---

**6.** Counts 4 and 5 are brought against Defendant I.R.S. pursuant to FOIA, and are not before the Court on the instant motions.

**7.** The Act contains several statutory exceptions, none of which is applicable to this case.

therefore the Act does not apply. Rather, Plaintiff contends that the purpose of its suit is to block an allegedly unconstitutional audit. Any taxes that may be assessed as a result of the audit, Plaintiff claims, are immaterial to the constitutional issues at hand. The Supreme Court already considered a similar claim in *Bob Jones University,* however, in which it held that the Act barred the plaintiff's constitutional claims to enjoin the I.R.S. from withdrawing plaintiff's 501(c)(3) status. 416 U.S. at 748–49, 94 S.Ct. 2038. It seems only logical that if courts cannot enjoin the I.R.S. from revoking an organization's tax-exempt status, courts similarly cannot enjoin the I.R.S. from conducting an audit to determine whether or not such a revocation is merited. *See, Dickens v. United States,* 671 F.2d 969, 971 (6th Cir.1982) (observing that the Act "is equally applicable to activities which are intended to or may culminate in the assessment or collection of taxes") (internal citations omitted). Notably, Plaintiff has not cited a single case in which a federal court enjoined an I.R.S. audit.

In the alternative, Plaintiff argues that its claims fall within one or both of the two judicially-created exceptions to the Act. First, under the test announced in *Enochs v. Williams Packing,* an action for injunctive relief may proceed, notwithstanding the Act, if the plaintiff can show: (1) that "under no circumstances could the Government ultimately prevail," and (2) that "equity jurisdiction otherwise exists." 370 U.S. at 7, 82 S.Ct. 1125. Here, Plaintiff cannot satisfy the first prong of the test. In considering this prong, the court must liberally interpret the law and the facts in favor of Defendants. *Id.* Even without this proviso, however, a plausible reading of the Amended Complaint is that the

I.R.S., upon discovery of Plaintiff's earnest efforts to assist in the impeachment of President Clinton, became legitimately suspicious as to whether Judicial Watch was operating within the confines of § 501(c)(3) as it relates to prohibited political activity. *See supra* note 2. Plaintiff's chronology of events, while intended to show a pattern of retaliation, also reveals that from 1998 to the present, Judicial Watch frequently criticized or sued members of the Clinton administration, and the I.R.S. continued to pursue the audit by various means.

The second recognized exception to the Act was announced by the Supreme Court in *South Carolina v. Regan,* 465 U.S. 367, 104 S.Ct. 1107, 79 L.Ed.2d 372 (1984). In that case, the state of South Carolina challenged the constitutionality, under the Tenth Amendment, of a provision in the tax code that set certain requirements for state-issued bonds. *Id.* The Court noted that if the Act were to bar the state's pre-enforcement lawsuit, South Carolina would itself incur no tax liability and thus would have to depend on third parties to pursue post-enforcement refund suits. *Id.* at 373, 104 S.Ct. 1107. The Court, in determining that South Carolina's suit could go forward, held that Congress had intended the Act to bar suits only when Congress had provided the aggrieved party with "an alternative legal avenue by which to contest the legality of a particular tax." *Id.*

If this language is given the broadest interpretation possible, Plaintiff's claims for injunctive relief could come under the *South Carolina v. Regan* exception. Defendants concede that the tax code provides no avenue of relief specifically for targets of allegedly unconstitutional audits.[8] Courts construing the exception,

---

**8.** Plaintiff's statutory remedies are limited to a suit for a refund, if taxes are ultimately assessed, and a suit for declaratory relief if

however, have strictly limited its applicability. *See, e.g., Spencer v. Brady,* 700 F.Supp. 601, 604 (D.D.C.1988) (finding that "[i]n *Regan,* the Court carved an extremely narrow second exception to the Anti-Injunction Act"); *American Society of Assoc. Executives v. Bentsen,* 848 F.Supp. 245, 250 (D.D.C.1994) (noting that the exception "is a narrow one tailored to the unique factual pattern in that case"); *Leves v. Internal Revenue Service,* 796 F.2d 1433, 1434 (11th Cir.1986) (finding the exception inapplicable because Regan "involved the rights of third parties to litigate the tax liability of persons against whom the tax was assessed").

The present case bears virtually no factual resemblance to *South Carolina v. Regan,* and Plaintiff has not cited any cases where the exception was stretched to permit the injunction of an audit. The burden is on Plaintiff to establish subject matter jurisdiction. *See,* Fed.R.Civ.P. 12(b)(1); *Adams v. Bain,* 697 F.2d 1213, 1219 (4th Cir.1982). Plaintiff has not persuaded this Court to break new ground in extending the recognized exceptions to the Anti-Injunction Act. If this Court were to do so, the door would swing wide open for audit targets to haul the I.R.S. into court anytime they believed the audit to be wrongful.[9] Such a result seems to constitute precisely the kind of judicial interference with the assessment and collection of taxes that the Act was designed to prevent.

Having found that this Court does not have jurisdiction to reach Plaintiff's claims for injunctive relief contained in Counts 1–3 of the Amended Complaint, those claims will be dismissed.[10] For the same reasons, Plaintiff's Motion to Stay or Enjoin Enforcement of Administrative Summons will also be dismissed.[11]

### B. Monetary Relief

Under some circumstances, a plaintiff may bring suit for money damages against individual federal employees for alleged constitutional torts. *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). Here, Plaintiff has asserted claims for monetary relief against each of the Individual Defendants for their allegedly unconstitutional conduct. Defendants argue that a *Bivens* remedy is not available in a suit against I.R.S. employees for conducting an allegedly unconstitutional audit.

The Fourth Circuit's position on this matter is somewhat in question. In a 1976 decision, the Fourth Circuit affirmed a district court's ruling that, although a *Bivens* action was available to a taxpayer who sued I.R.S. agents for harassing him and singling him out for investigation and audit, the claims failed on summary judgment for lack of evidence. *White v. Boyle,* 538 F.2d 1077, 1079 (4th Cir.1976). In so deciding, the court stated that, "[c]learly, if

---

Judicial Watch is stripped of its tax-exempt status. *See,* 26 U.S.C. §§ 7422, 7428.

**9.** Indeed, it is the rare audited taxpayer who does not believe that their audit is undeserved.

**10.** The Court, having found that the Anti-Injunction Act requires the dismissal of these claims, need not address Defendants' argument that the claims are also barred by the doctrine of sovereign immunity, which disallows claims to enjoin government actors from

performing their statutory duties. *See, Larson v. Domestic and Foreign Commerce Corp.,* 337 U.S. 682, 688, 69 S.Ct. 1457, 93 L.Ed. 1628 (1949).

**11.** If the I.R.S. brings an action to enforce the summons, Plaintiff will have an opportunity, in a limited evidentiary hearing in federal district court, to challenge the propriety of the audit and offer evidence of wrongful conduct. *See, Alphin v. United States,* 809 F.2d 236 (4th Cir.1987).

White can demonstrate an injury consequent upon the violation by federal agents of his constitutionally protected rights, absent official immunity, he is entitled to recovery." *Id.*

Since *White,* however, the United States Supreme Court has restricted the availability of *Bivens* actions, by expanding on language in *Bivens* indicating that such relief is permissible only when there are "no special factors counseling hesitation in the absence of affirmative action by Congress." 403 U.S. at 396 91 S.Ct. 1999. The Court has found that affirmative action by Congress to create a statutory or regulatory remedial scheme, even if the scheme lacks complete remedies for constitutional violations, is sufficient to bar a *Bivens* action. *See, e.g., Schweiker v. Chilicky,* 487 U.S. 412, 108 S.Ct. 2460, 101 L.Ed.2d 370 (1988) (remedial scheme in context of social security system); *Chappell v. Wallace,* 462 U.S. 296, 304, 103 S.Ct. 2362, 76 L.Ed.2d 586 (1983) (remedial scheme in context of military justice system); *Bush v. Lucas,* 462 U.S. 367, 368, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1983) (remedial scheme in context of civil service system). Summing up its approach to these cases, the Court stated, "[w]hen the design of a Government program suggests that Congress has provided what it considers adequate remedial mechanisms for constitutional violations that may occur in the course of its administration, we have not created additional *Bivens* remedies." *Schweiker* at 423, 108 S.Ct. 2460.

Circuit courts have applied this reasoning to deny *Bivens* claims in lawsuits against I.R.S. employees where the plaintiffs would have another avenue of relief through the provisions of the Internal Revenue Code. *See, e.g., Shreiber v. Mastro-giovanni,* 214 F.3d 148 (3rd Cir.2000); *Fishburn v. Brown,* 125 F.3d 979, 982–83 (6th Cir.1997); *Vennes v. Unknown Number of Unidentified Agents,* 26 F.3d 1448, 1453–53 (8th Cir.1994). In these cases, however, the harm caused by the alleged constitutional violations amounted to the illegal assessment or collection of taxes, which could be cured, at least for the most part, by refund suits and other similar statutory remedies. In contrast, where the constitutional violation is a harm in itself, such as the suppression of political speech or the violation of Fourth Amendment rights, courts have recognized the propriety of a *Bivens* remedy. *See, Nat'l Commodity and Barter Assoc. v. Gibbs,* 886 F.2d 1240, 1248 (10th Cir.1989) (permitting *Bivens* action for violations of the First and Fourth Amendments because "certain values ... may be superior to the need to protect the integrity of the internal revenue system"); *Western Center for Journalism v. Cederquist,* 235 F.3d 1153, (9th Cir.2000) (Reinhardt, J., concurring) (observing that a *Bivens* remedy is appropriate for retaliatory audits because Congress has fashioned no remedy for I.R.S. conduct that punishes political speech); *Hurt v. United States,* 889 F.Supp. 248 (S.D.W.Va.1995) (finding grounds for a *Bivens* remedy where plaintiffs sued I.R.S. agents for allegedly retaliatory and harassing auditing practices).

■ Accordingly, this Court is persuaded that a *Bivens* action should be available where, as here, the statutory remedies provided in the Internal Revenue Code (*i.e.,* a refund suit and action for declaratory relief) would not address the alleged constitutional wrongs of the I.R.S. defendants.[12] This does not end the inquiry,

---

12. Defendants concede that the only statutory remedies available to Plaintiffs through the Internal Revenue Code consist of a suit for a refund, if taxes are ultimately assessed, and a suit for declaratory relief if Judicial Watch is

however, because the Individual Defendants argue that they are entitled to qualified immunity for their actions relating to the Judicial Watch audit.

Government officials performing discretionary functions are entitled to qualified immunity to the extent that "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Qualified immunity is "an immunity from suit rather than a mere defense to liability." *Mitchell v. Forsyth,* 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985). Accordingly, courts should resolve a question of qualified immunity at the earliest possible stage of the litigation. *See, Saucier v. Katz,* 533 U.S. 194, 121 S.Ct. 2151, 2155–56, 150 L.Ed.2d 272 (2001).

■ The threshold question in a qualified immunity inquiry is, "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Saucier,* 121 S.Ct. at 2156. If a violation could be found on a favorable view of the plaintiff's facts, the court then considers "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* In this case, Plaintiff alleges that the audit violates Judicial Watch's First Amendment rights by punishing the organization's political speech and freedom of association, and that it violates Plaintiff's Fifth Amendment due process rights by harassing Judicial Watch and singling it out for audit without basis in law. Although the facts alleged in the Amended Complaint, when viewed in the light most favorable to Plaintiff, might make out these constitutional violations, they fail to

show that reasonable I.R.S. agents in the situation faced by Defendants would have known they were committing these constitutional violations.

The overriding, insurmountable problem for Plaintiff's claims is that the political speech for which it claims to be "punished" and "singled out" is exactly the type of activity that may legitimately cause it to lose tax-exempt status under § 501(c)(3), which requires that organizations "not participate in, or intervene in (including the publishing or distributing of statements), any political campaign on behalf of (or in opposition to) any candidate for public office," and that "no substantial part of [its] activities is carrying on propaganda, or otherwise attempting, to influence legislation." 26 U.S.C. § 501(c)(3).

As to Defendants Rossotti, Dorsey, and Miller, Plaintiff contends that they violated Plaintiff's rights by making the decision to conduct an audit, sending Plaintiff audit notices and summons, and/or failing to stop the audit at Plaintiff's request. These allegations could just as easily be interpreted, however, as evidence of Defendants' efforts to enforce I.R.S. statutes and regulations. In its attempt to show a causal connection between its actions and the behavior of these Defendants, Plaintiff presents a chronology of events that reveals Judicial Watch's persistence in resisting the audit and the I.R.S.'s persistence in pursuing it. On the facts presented by Plaintiff, therefore, these Defendants are entitled to qualified immunity.

This Court is confronted with a more difficult decision regarding Defendants Breslan and Hampel. Taking Plaintiff's allegations as true, Defendant Breslan's comments at the November, 1998 meeting, and Defendant Hampel's warnings that

stripped of its tax-exempt status. *See,* 26      U.S.C. §§ 7422, 7428.

Plaintiff was still on the I.R.S. "radar screen," could constitute evidence of bad faith or retaliation by those agents. It is equally plausible, however, that their comments reflect the agents' reasonable suspicions that Judicial Watch was operating outside the confines of § 501(c)(3). This Court, while not condoning the alleged comments, cannot conclude that Defendants Breslan and Hampel should have known that their conduct violated Plaintiff's constitutional rights. Therefore, qualified immunity is appropriate here as well.

Certainly, the I.R.S. and its agents are bound by the tenets of the Constitution in the enforcement of the agency's rules and regulations. To deny qualified immunity under these facts, however, would grossly impede the agency's ability to investigate suspected violations of § 501(c)(3)'s prohibitions on certain political activity. Any tax exempt organization engaging in possibly prohibited conduct, which was subsequently audited or investigated by the I.R.S., could maintain a suit for harassment and suppression of political speech simply by pointing to the timing of the audit. Agents, fearing civil liability for their discretionary decision to conduct an audit, would be hampered in their official duties. On the facts presented in the Amended Complaint, therefore, this Court concludes that Defendants Rossotti, Dorsey, Breslan, Hampel, and Miller are entitled to qualified immunity on the claims against them for monetary relief.

## IV. CONCLUSION

For the foregoing reasons, the Court will deny Plaintiff's Motion to Stay or Enjoin Enforcement of Administrative Summons, and will grant Defendants' Motion to Dismiss all claims against them. A separate order consistent with this memorandum will issue.